**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| EMMANUEL SEWELL | : |
| Plaintiff | : |
| v. | : Civil Action No. DKC-08-1027 |
| WARDEN KATHLEEN GREEN, *et al.* | : |
| Defendants | : |

o0o

## **MEMORANDUM OPINION**

Pending in the above-captioned civil rights case is Defendants' Motion to Dismiss or for Summary Judgment. Paper No. 28. Plaintiff has opposed the motion, Paper No. 31, and has filed non-dispositive motions. Paper No. 32 and 33. On June 29, 2009, this court issued an Order denying Defendants' motion without prejudice so that Plaintiff could be provided an opportunity to view a digital recording of the use of force submitted by Defendants as an exhibit. Paper No. 35. Defendants renewed their Motion to Dismiss or for Summary Judgment after Plaintiff viewed the digital recording. Paper No. 39. Plaintiff filed a supplementary Response in Opposition on August 25, 2009.[1] Paper No. 47. On November 18, 2009, Defendants filed a Reply with respect to Plaintiff's supplementary Response. Paper No. 55. A hearing on this matter unnecessary. Local Rule 105.6 (D. Md. 2009).

**Background**

Plaintiff claims that on April 2, 2008, he was leaving his cell in the Eastern Correctional

---

[1] Plaintiff also filed a Motion Opposing Extensions of Time and a Motion for Default Judgment. Defendants did not default, a responsive pleading was filed in a timely manner. In addition Plaintiff has failed to establish that the extensions of time have prejudiced him in any tangible way. Both motions (Paper No. 52 and 54) shall be denied.

Institution (ECI) for lunch when another inmate, Tibbs, began arguing with him.  Paper Nos. 1 and 3.  He tried to walk away from Tibbs to end the argument, but Tibbs persisted.  Officer Romines rushed up and asked the two men, "'what is the problem.'"  Paper No. 3 at p.6.  Plaintiff states he tried to walk away, but Romines began bumping him with his chest.  *Id*.  Plaintiff turned around quickly to face him and asked what was wrong with him.  *Id*.  Plaintiff states Romines began shoving him, and when Plaintiff asked him not to put his hands on him, Romines called for assistance on the radio, claiming Plaintiff had assaulted him.  Plaintiff walked away from Romines toward the front of the tier, where Officer Lowe handcuffed him and escorted him to the medical unit.  *Id*.

Plaintiff claims he was asked by Chief of Security King if he felt threatened by Romines and Plaintiff answered yes.  King then ordered Plaintiff to be locked up in the segregation unit, gave him a form to fill out, and was photographed by Officer Gallagher.  Plaintiff claims nine officers came to the cell when he was ordered to strip, even though he was still handcuffed.  He claims he questioned the procedure and "verbally refused to be degraded," at which time, Officer Westbrook grabbed his shoulder.  Paper No. 3. Plaintiff braced himself against the wall.  He claims at this point several officers grabbed his arms and legs, hoisted him up into the air, and slammed him face first onto the concrete floor.  Plaintiff's legs were pinned to the floor and his arms were pried apart against the steel handcuffs, causing his right side to go numb.  Plaintiff claims Sergeant Ziolkowski then cut his clothes off.  *Id*.

After the forced strip search Plaintiff was placed in a segregation cell, where he remained from April 2, 2008 through April 11, 2008.  He claims the cell where he was confined had urine and feces on the food slot, floor, walls and toilet.  He states he vomited twice due to the smell and

pressed his face against a wire mesh window in an attempt to breathe fresh air. He claims that as a result of confinement under such conditions he suffers from headaches, high blood pressure, and a fungus infection on his feet caused by walking barefoot in the cell. Plaintiff alleges he was not seen by medical staff until May 9, 2008, when it was discovered his blood pressure was 160/110.

Defendants allege that Plaintiff began the confrontation by bumping Romines. Paper No. 28. at Ex. 1. Romines claims he observed Plaintiff in a verbal confrontation with inmate Darthaniel Tibbs and gave the two men a direct order to break it up. Plaintiff was given a direct order to place his hands behind his back to be handcuffed. Instead of complying with the order Plaintiff took a step toward Romines and struck him on the wrist as Romines tried to handcuff him. Romines called for assistance and claims Plaintiff said, "don't put your fucking hands on me bitch. I will kill you." *Id*. at p. 6. Other officers arrived, and Officer Lowe handcuffed Plaintiff and escorted him to the medical department where no injuries were noted.

### Non-Dispositive Motions

Plaintiff seeks reconsideration of this court's March 19, 2009 Order denying copy work. Paper No. 32. The copy work request was denied because Plaintiff failed to state a particularized need for the documents sought. His Motion for Writ of Habeas Corpus Ad Testificandum was also denied because no hearing had been scheduled, and his Motion for Appointment of Counsel was denied without prejudice because no exceptional circumstances required appointment of an attorney. Paper No. 30. In support of his motion for reconsideration, Plaintiff asserts that the interests of justice would be served if he was provided the copy work sought and an evidentiary hearing is necessary to preserve witness testimony. Paper No. 32. He further claims that the services of an attorney are necessary because he suffered severe head trauma on April 2, 2008, and again on

January 20, 2009, causing a broken eye socket, disfigurement of his skull and right eye, a lacerated ear and eye, and nerve damage to his right leg, and now suffers chronic migraine headaches.[2] *Id*. at p. 3.  Plaintiff presents no medical records to support any of the allegations that he has suffered the injuries described.  Notwithstanding his assertions, it is clear, as previously observed by this court, that Plaintiff has the wherewithal to either present his claims himself or to access persons who can assist in the presentation of his claims.  Plaintiff's Motion for Reconsideration is denied.

Plaintiff has also filed a Motion to Compel Discovery.  Paper No. 33.  A Scheduling Order was not issued in this case.  *See* Local Rule 104.4 (D. Md. 2009).  In the absence of a Scheduling order or an agreement to commence discovery, Plaintiff is not entitled to compel Defendants to engage in discovery.  The motion shall be denied.

**Standard of Review**

A motion for summary judgment is governed by Fed. R. Civ. P. 56(c), which provides that:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

---

[2] Medical records show no injury resulting from the April 2, 2008 incident.  Plaintiff is free to file a separate cause of action concerning any allegation regarding denial of medical care for the January 20, 2009 incident.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

Excessive Force Claims

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley v. Albers*, 475 U. S. 312, 321 (1986). If the injuries sustained as a result of the alleged excessive is *de minimis*, Plaintiff cannot prevail on an Eighth Amendment claim, absent

extraordinary circumstances. *See Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994). "Extraordinary circumstances are present when the force used is of a sort repugnant to the conscience of mankind for the pain itself is such that it can properly be said to constitute more than de minimis injury." *Taylor v. McDuffie*, 155 F. 3d 479, 483 (4th Cir. 1998); *see also Riley v. Dorton*, 115 F. 3d 1159, 1166 (4th Cir. 1997) (record must support a finding that Plaintiff sustained more than de minimis injury).

The first use of force against Plaintiff allegedly occurred during his confrontation with Officer Romines on the housing unit tier. There is no dispute between the parties that Plaintiff refused to be handcuffed by the officers. The dispute goes to who initiated contact. This court finds that the dispute does not concern a material fact because the contact did not result in more than a de minimis injury. "Although the Constitution does 'not require that an injury be serious or leave visible marks or scars' to be actionable, . . . .'de minimis injury can serve as conclusive evidence that de minimis force was used.'" *Riley*, 115 F.3d at 1168 (quoting *Norman*, 25 F.3d at 1261). There is no allegation that Plaintiff's altercation with Romines resulted in actual injury to him.

The second use of force alleged occurred during the strip search. The incident was digitally recorded and presented to the court for review. Plaintiff claims he was slammed to the concrete floor face-first by the officers conducting the strip search.[3] The strip search was videotaped. A copy of the digital recording has been submitted as an exhibit with the Motion for Summary Judgment. Paper No. 28 at Ex. 5. The recording has been reviewed by the court and establishes that Plaintiff was not slammed to the floor as alleged. The officers involved in the strip search gave Plaintiff

---

[3] The serious injuries Plaintiff claims he endured were allegedly the result of the officers slamming him face first to the floor.

numerous opportunities to cooperate with search procedures. Plaintiff, however, verbally declined to cooperate, stating instead that the officers were wrong. Although Plaintiff can be heard complaining that his arm is numb during the search, he does not appear to be in distress or acute pain upon standing after the search.

Plaintiff viewed the digital recording in the presence of prison staff on July 28, 2009.[4] Paper No. 39. Plaintiff claims he was not provided enough time to review the recording; specifically he claims he was given 12 minutes to view the recording. Paper No. 42. He further alleges Defendants engaged in misconduct by failing to provide him with the recording and asserts the recording was likely doctored or edited given the length of time it took prison officials to arrange for him to view it. *Id*. Plaintiff states the affidavit of Gary Sindy regarding the circumstances surrounding Plaintiff's viewing of the recording is likely untrue given that Plaintiff has sued Sindy in another action, giving him motive to lie. *Id*. He urges this court not to accept any of the paperwork regarding the digital recording and to deny Defendants Motion to Renew the Motion to Dismiss or for Summary Judgment.[5] *Id*. Plaintiff does not state specifically how the digital recording may have been altered to reflect something other than the true events.

---

[4]     The record reflects that there was some delay in arranging for Plaintiff to view the recording. Paper No. 31 at Ex. 1. The court finds, however, that the delay was not excessive and the dispute between the parties regarding the cause of the delay is not material to the resolution of the claims raised in this case.

5       Plaintiff also states that Defendants are not entitled to judgment in their favor because they have failed to comply with discovery requests he has made. Paper No. 44. As stated herein, no scheduling order was issued in this case; thus Defendants were not obligated to comply with discovery requests made by Plaintiff.

The digital recording of the strip search does not support Plaintiff's allegation that he was slammed face-first onto the floor. Paper No. 28 at Ex. 5. Plaintiff is asked to comply with the strip search and refuses, stating "you are wrong." At that point, five officers came into the cell, placed him on the floor on his back, and then rolled him to his stomach. Plaintiff was handcuffed behind his back. Four officers held Plaintiff down on the ground and one officer cut away his clothes. Plaintiff can be heard saying the officers were wrong and that his right arm was numb. After Plaintiff's clothes are removed he is assisted to his feet, escorted to the door, which was closed after the officers exited, and Plaintiff's cuffs were removed through the feed-up slot of the cell door. Plaintiff does not appear to be injured at the conclusion of the incident.

Even if the court disregards the digital recording, as Plaintiff suggests, the claim still fails. Plaintiff has produced no evidence of a serious injury resulting from the search and the concomitant use of force. Given the circumstances justifying the use of force, Plaintiff's lack of a significant injury is further evidence that the amount of force used was minimal. Defendants are entitled to summary judgment in their favor with regard to the excessive force claim.

## Conditions of Confinement Claim

Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981). However, conditions which are merely restrictive or even harsh "are part of the penalty that criminal offenders pay for their offenses against society." *Id*.

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that 'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original; citation omitted).

"[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir.1993). Plaintiff claims he was forced to stay in a dirty and unsanitary cell for nine days.[6] Paper No. 1, 3, 7 and 8. He has failed to produce evidence of a significant physical or emotional injury that resulted from the challenged conditions forced upon him for that brief period of time. Defendants are entitled to summary judgment in their favor on Plaintiff's conditions of confinement claim.

## Access to Courts

Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U. S. 817, 821 (1977). However:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U. S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F. 3d 773, 776

---

[6] His assertions that he was deprived of certain types of property for this period of time do not state a constitutional claim.

9

(4th Cir. 1997), *quoting Lewis*, 518 U.S. at 355. "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis*, 518 U.S. at 349.

Plaintiff claims harm because a petition for judicial review was dismissed as untimely by the Circuit Court for Baltimore County. Paper No. 7. He alleges that the petition was submitted to prison employees for mailing well before the filing deadline, and also the state court has refused to recognize the prison mailbox rule, depriving him of access to courts. The allegations fail to state a constitutional claim against the named Defendants. The state court's refusal to recognize the prison mailbox rule is not the responsibility of Defendants. Moreover, Plaintiff can seek appellate review before the Court of Special Appeals of Maryland for adverse state court decisions. This aspect of Plaintiff's access to courts claim must be dismissed.

Plaintiff also claims that the confrontation with correctional officers as well as his subsequent assignment to segregation was in retaliation for past litigation. He has failed to submit any evidence to support the conclusion that the officers' motives were retaliatory. Plaintiff admits that he did not comply with direct orders and did not cooperate with the strip search. Aside from Plaintiff's bald allegations, there is no evidence that the officers' conduct was motivated by retaliation. "'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" *Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).

Plaintiff's assertion that he is deprived access to legal materials and an adequate law library

10

is belied by the documents filed in this case. He has filed three amended complaints, two of which exceed over 20 pages in length, cites case law extensively, and includes sworn statements by other inmates. *See* Paper No. 3, 7 and 8. Thus, it appears Plaintiff has adequate access to legal materials and has demonstrated the wherewithal to present his claims via access to those materials.

Miscellaneous Claims

Plaintiff claims Defendants violated rules governing issuance of an institutional notice of infraction, making the disciplinary action unconstitutional. Paper No. 8 pp. 5–7. In prison disciplinary proceedings involving the possible loss of good conduct credits, a prisoner is entitled to certain procedural due process protections. *See Wolff v. McDonnell*, 418 U.S. 539 (1974). These include advance written notice of the charges against him, a hearing, the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision. *Wolff*, 418 U. S. at 564-571. Substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Correctional Institute v. Hill*, 472 U.S. 445, 455 (1985). The mere fact that a DOC rule governing adjustment hearings was violated does not necessarily equal a due process violation. *See Riccio v. County of Fairfax*, 907 F.2d 1459, 1456 (4th Cir. 1990) ("a state does not necessarily violate the constitution every time it violates one of its rules."); *Ewell v. Murray*, 813 F. Supp. 1180, 1183 (W.D. Va. 1995) ("Even if state law creates a liberty interest, violations of due process are to be measured against a federal standard of what process is due."). Plaintiff does not deny he received advance notice of the charges against him and his guilty plea to the charges is some evidence supporting the guilty finding. The failure to charge him with the infraction within a specified period of time does not convert a violation of institutional procedural rule to a constitutional claim.

Plaintiff claims that the confiscation of his property when he was assigned to segregation violated his due process rights. Paper No. 8. In the case of lost or stolen property, sufficient due process is afforded to a prisoner if he has access to an adequate post-deprivation remedy. *See Parratt v. Taylor*, 451 U. S. 527, 542-44 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U. S. 327 (1986). The right to seek damages and injunctive relief in Maryland courts constitutes an adequate post deprivation remedy.[7] *See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982).[8] The claim with respect to Plaintiff's property must be dismissed.

A separate Order shall be entered in accordance with this Memorandum Opinion.

Date: February 9, 2010            _____/s/_____
                                  DEBORAH K. CHASANOW
                                  United States District Judge

---

[7] Plaintiff may avail himself of remedies under the Maryland's Tort Claims Act and through the Inmate Grievance Office.

[8] Although *Juncker* dealt with personal injury rather than property loss, its analysis and conclusion that sufficient due process is afforded through post deprivation remedies available in the Maryland courts also applies to cases of lost or stolen property, given *Juncker's* reliance on *Parratt* in dismissing plaintiff's due process claim.